TIMOTHY S. LAFFREDI (WI BAR 1055133)
Assistant United States Trustee
MARTA E. VILLACORTA (NY SBN 4918280)
Assistant United States Trustee
JASON BLUMBERG (CA SBN 330150)
Trial Attorney
ELVINA ROFAEL (CA SBN 333919)
Trial Attorney
United States Department of Justice
Office of the U.S. Trustee
280 South First Street, Ste. 268
San Jose, California 95113
Telephone: (408) 535-5525
Facsimile: (408) 535-5532
Email: jason.blumberg@usdoj.gov
        elvina.rofael@usdoj.gov

Attorneys for Tracy Hope Davis,
United States Trustee for Region 17

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>FORMATION GROUP FUND I, L.P., a Delaware limited partnership, and<br><br>FORMATION GROUP GP I, LLC, a Delaware limited liability company,<br><br>Debtors. | Bankruptcy Case No. 22-50302 MEH<br><br>Chapter 11<br>(proposed Lead Case)<br><br>Date: April 18, 2022<br>Time: 10:00 a.m.<br>Judge: Honorable M. Elaine Hammond<br>Courtroom 11, 280 South First St.<br>San Jose, CA 95113-3099 |

**OBJECTION AND RESERVATION OF RIGHTS OF THE
UNITED STATES TRUSTEE TO DEBTORS' MOTION FOR ORDER AUTHORIZING
EMPLOYMENT OF CHIEF RESTRUCTURING OFFICER**

Tracy Hope Davis, United States Trustee for Region 17 (the "UST"), by and through her undersigned counsel, hereby files this objection and reservation of rights to the *Debtors' Emergency Motion for Authority to Designate Andrew De Camara as their Chief Restructuring Officer under 11 U.S.C. §§ 105(a) and 363(b), Effective as of the Petition Date* (ECF No. 4) (the "Motion"). In support of her Objection, the UST respectfully represents as follows:

## I. INTRODUCTION

1. As a threshold matter, the Debtors have not demonstrated that immediate relief is necessary to avoid immediate and irreparable harm. Thus, by virtue of Fed. R. Bankr. 6003(b), consideration of the Motion should be deferred to a hearing date that is more than 21 says after the petition date.

2. The services to be provided by Mr. De Camara and Sherwood Partners, Inc. ("Sherwood") include some traditionally provided by a financial advisor. A financial advisor may be retained by a debtor in possession only if it is a disinterested person. *See* 11 U.S.C. § 327(a).

3. By definition, a chief restructuring officer is an officer. Thus, Mr. De Camara is an insider of the Debtor. *See* 11 U.S.C. § 101(31)(B)(ii). Insiders are not disinterested. *See* 11 U.S.C. § 101(14)(A). Moreover, by virtue of Mr. De Camara's position in the Debtors' top management, Sherwood would also not be disinterested.

4. If the Court is inclined to consider the merits of the Motion on April 18, 2022, the UST opposes the Debtors' retention of Mr. De Camara as chief restructuring officer and Sherwood to provide CRO support, unless the conditions described in Paragraph 25 of this Objection are included in any Order granting the Motion.

## II. STATEMENT OF FACTS

**A.    General Case Background**

5. On April 10, 2022 (the "Petition Date"), the Debtors commenced voluntary cases under Chapter 11 of the United States Bankruptcy Code. *See* ECF No. 1. The Debtors are currently debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code. The Debtors are represented by Ori Katz, Esq. and Jeannie Kim, Esq of Sheppard, Mullin, Richter & Hampton LLP. *See* docket generally.

6. On April 10, 2022, the Debtors filed a motion for joint administration of these cases for procedural purposes only. *See* ECF No. 2. No order has been entered on this motion. *See* docket generally.[1]

7. To date, the Debtors have not filed the required Schedules and Statements, including Schedule A/B, Schedule D, Schedule E/F and the Statement of Financial Affairs, which are due April 25, 2022. *See* ECF No. 8.

8. The meeting of creditors under 11 U.S.C. § 341(a) is scheduled for May 3, 2022. *See* ECF No. 6.

9. According to the first day declaration of Rei Young Jang (ECF No. 5) (the "First Day Declaration"), Mr. Jang is a managing member of Debtor Formation Group GP I, LLC ("Formation General Partner"). Formation General Partner is the general partner of two investment funds: (i) Debtor Formation Group Fund I, L.P. ("FGF"); and (ii) non-Debtor Formation Group (Cayman) Fund I, L.P (together with FGF, the "Funds"). *See* First Day Declaration, at ¶¶ 1-2.

10. According to the First Day Declaration, Bon Woong (Brian) Koo is the founder of the Funds. *See* First Day Declaration, at ¶¶ 8, 20. Mr. Koo is also a managing member of Formation General Partner. *See* Petition in Case No. 22-50303 (ECF No. 1), at p. 7 of 13.

11. According to the First Day Declaration, the Debtors have selected Mr. De Camara, a Senior Managing Director of Sherwood, as the Debtors' chief restructuring officer ("CRO"). *See* First Day Declaration, at ¶ 46. Mr. De Camara has acted as the Debtor's CRO since March 17, 2022. *See* Declaration of Andrew De Camara (ECF No. 7) (the "CRO Declaration"), ¶ 5.

---

[1] The UST is informed that the Debtors have agreed to set this motion for hearing.

12. According to the First Day Declaration, these bankruptcy cases were precipitated by an arbitration proceeding commenced by creditor Yesco Holdings Co., Ltd ("Yesco") in New York. *See* First Day Declaration, at ¶¶ 14, 30.[2]

13. According to the First Day Declaration, the Debtor's "only secured debt is the disputed and unliquidated claim asserted by Yesco for in excess of $53 million." The Debtors have general unsecured debt of "approximately $6,521,150.59 spread over seven creditors (not including Yesco's claim)." *See* First Day Declaration, at ¶¶ 28-29.

B. **The Motion**

14. As part of the Motion, the Debtors seek entry of an order authorizing: (i) the Debtors to retain and employ Mr. De Camara, through Sherwood, as their CRO; and (ii) the Debtors to use and compensate additional personnel provided by Sherwood (the "Sherwood Personnel") to support the CRO effective as of the Petition Date. *See* Motion, at pp. 2, 6 of 17; *see also* proposed Order (ECF No. 4), at ¶ 2.

15. The scope of Sherwood's proposed services include: (i) providing business plan analysis and liquidation analysis for the purpose of restructuring the Debtors' estates; (ii) assisting in the preparation of the Debtors' schedules and statements; (iii) assisting in the preparation of monthly operating reports; and (iv) preparing cash flow projections and budgets. *See* Motion, at pp. 7-8 of 17.

---

[2] Yesco "is a holding company affiliated with, but not wholly or minority owned by LS Group. Yesco is publicly traded on the Korea Exchange …. At no point in time has Mr. Koo ever had legal control over LS Group or Yesco, although certain of his relatives are or have been officers or directors of Yesco." *See* First Day Declaration, at ¶ 31.

16. As disclosed in the Motion and Sherwood's engagement agreement (ECF No. 7, at pp. 10-19 of 19) (the "Engagement Agreement"), the salient terms of Sherwood's proposed engagement include the following:

    a. the retention would be approved pursuant to Sections 105(a) and 363(b), as opposed to Section 327. *See* Motion, at p. 2 of 17.

    b. Mr. De Camara's hourly rate is $600. The hourly rates of other Sherwood Personnel range from $425 to $575. *See* Motion, at p. 10 of 17. As of the Petition Date, Sherwood Partners was holding a retainer with a balance of $96,500. *Id.*

    c. Notwithstanding Paragraph 10 and Schedule I to the Engagement Agreement, the "the Debtors shall indemnify Mr. De Camara, in his capacity as CRO, on the same terms as provided to the Debtors' directors and officers under their respective corporate bylaws and applicable state law." In addition, the Debtors "shall have no obligation to indemnify Sherwood or to provide contribution or reimbursement to Sherwood for any claim or expense … judicially determined to have resulted primarily from [Sherwood's] willful misconduct, gross negligence, bad faith, or self-dealing …." *See* Motion, at pp. 10-11 of 17.

    d. Sherwood and Mr. De Camara have agreed to "strike" the arbitration provision in Paragraph 11 of the Engagement Agreement. *See* Motion, at p. 6 of 17.

### III. OBJECTION

**A. Consideration of the Motion Should be Deferred to a Hearing Date that is 21 Days after the Petition Date.**

17. A court may grant "a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate" during the first 21 days of a case only if "necessary to avoid immediate and irreparable harm." *See* Fed. R. Bankr. 6003(b); *see also In re Humboldt Creamery, LLC*, 2009 WL 2820552, at *1 (Bankr. N.D. Cal. Apr. 23, 2009) ("The request is governed by Rule 6003(b) of the Federal Rules of Bankruptcy Procedure. This rule does not permit the payment of a claim which arose prepetition for the first 20 days of a bankruptcy unless it is necessary to avoid immediate and irreparable harm.").

18. Here, the Debtors have not demonstrated that immediate relief is necessary to avoid immediate and irreparable harm. Accordingly, the Debtors should set the Motion for hearing on regular notice, at least 21 days after the Petition date.[3]

**B.** **The Motion Should be Denied on the Merits, Unless Modified to Address the Concerns Set Forth Herein.**

19. Section 327(a) of the Bankruptcy Code provides, in pertinent part, that a trustee "may employ one or more attorneys, accountants … or other professional persons, that do not hold or represent an interest adverse to the estate, *and that are disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties under this title." *See* 11 U.S.C. § 327(a) (emphasis added); *see also In re Tevis*, 347 B.R. 679, 687 (B.A.P. 9th Cir. 2006) ("Section 327(a) requires the application of a two-pronged test for employment of professional persons.").[4]

20. The use of section 363(b) as authority for allowing employment of chief restructuring officers who are not "disinterested persons" has been met with criticism and rejected by some bankruptcy courts. *See, e.g., In re Copenhaver, Inc.*, 506 B.R. 757, 762 (Bankr. C.D. Ill. 2014) (internal citations omitted); *In re McDermott Int'l, Inc.*, 614 B.R. 244, 253, 255 (Bankr. S.D. Tex. 2020) (analyzing retention of chief transformation officer under § 327(a), because applicants "routinely push more and more services under the auspices of § 363(b) to avoid court oversight" and "[f]inancial advisory services are inappropriately categorized as 'back office' support services …."). *But see In re Nine W. Holdings, Inc.*, 588 B.R. 678, 686–87 (Bankr. S.D.N.Y. 2018) (noting the "mountain of precedent" permitting CROs to be retained under § 363(b)).

---

[3] In other recent cases in this District, debtors have filed CRO motions as "Second Day" motions on regular notice. *See*, *e.g.*, Case No. 20-50682 (*In re Wave Computing, Inc.*) (ECF Nos. 92, 95); *In re Watsonville Hospital Corp.*, Case No. 21-54177 (ECF Nos. 73, 83).

[4] In a chapter 11 case, a debtor in possession has the powers and duties of a trustee. *See* 11 U.S.C. § 1107(a).

21. By definition, a chief restructuring officer is an officer. Thus, from the moment of his employment in that capacity, Mr. De Camara has been an insider. He is not a disinterested person under Sections 327(a) and 101(14). *See* 11 U.S.C. §§ 101(14)(A) and (B), 101(31)(B)(ii) (defining "insider" as an officer of a debtor-corporation). Moreover, the statutory definition of "insider" is not exhaustive and may include individuals who have a certain degree of control over the debtor regardless of the title. *See In re Longview Aluminum, L.L.C.*, 657 F.3d 507, 509-10 (7th Cir. 2011).

22. As discussed above, the scope of Sherwood's services suggests the possibility that the firm will provide CRO support *and* act as a financial advisor. *See* ¶ 15, *supra*.[5]

23. "'Generally, financial advisors, workout specialists and consultants are, for the purpose of Section 327 of the Bankruptcy Code, professionals.' … When employment is proposed for one of these positions, the procedures required by § 327 should be followed in order to further the policies of ensuring that employed persons are *impartial and that the costs and administrative expenses of a case remain subject to judicial oversight*." *See In re Copenhaver, Inc.*, 506 B.R. at 762 (emphasis added).

24. Thus, if a financial firm seeks retention as a professional person, that retention must be approved under 11 U.S.C. § 327(a). A member of a professional firm cannot serve as a member of the debtor's top management (such as a CRO) or the board of directors without disqualifying the professional firm from service as a professional; the firm will not be disinterested. *See* 11 U.S.C. § 101(14).

---

[5] Sherwood is "financial advisory firm which specializes in the restructuring or wind-down of companies in financial distress." *See* CRO Declaration, at ¶ 17.

Case: 22-50302    Doc# 16    Filed: 04/13/22    Entered: 04/13/22 14:23:57    Page 7 of 10

25. In light of the foregoing concerns, the UST opposes the Motion, unless the following conditions are included in any Order with respect to the Motion:

   a. as chief restructuring officer, Mr. De Camara will act under the direction, control and guidance of the Debtors' board of directors and shall serve at the Board's pleasure.

   b. Sherwood and its affiliates shall not act as a financial advisor, claims agent/claims administrator, or investor/acquirer in the above-captioned cases.

   c. in the event the Debtors seek to have Sherwood Personnel assume executive officer positions that are different than the positions disclosed in the Motion, or to modify materially the functions of the persons engaged, a motion to modify the retention shall be filed.

   e. for a period of three years after the conclusion of the engagement, neither Sherwood nor any of its affiliates shall make any investments in the Debtors.

   d. Sherwood shall disclose any and all facts that may have a bearing on whether the firm, its affiliates, and/or any individuals working on the engagement hold or represent any interest adverse to Debtors, their creditors, or other parties in interest. The obligation to disclose is a continuing obligation.

   e. the Order shall identify the Sherwood Personnel to be furnished by Sherwood.

   f. Sherwood shall file with the Court, and provide notice to the UST and all official committees appointed in these Chapter 11 cases, reports of compensation earned and expenses incurred on a monthly basis (the "Reports"). Such reports shall contain summaries that describe the services provided, identify the compensation earned by the CRO and by Sherwood Personnel, and itemize the expenses incurred. Time records shall: (i) be appended to the reports; (ii) contain detailed time entries describing the task(s) performed; and (iii) be organized by project category. Where personnel are providing services at an hourly rate, the time entries shall identify the time spent completing each task in 1/10th hour increments and the corresponding charge (time multiplied by hourly rate) for each task. Where personnel are providing services at a "flat" rate, the time entries shall be kept in hourly increments. Parties in interest shall have fourteen days after the date each Report is filed with the Court and served to object to such report. All compensation shall be subject to review by the Court in the event an objection is filed.

   g. Sherwood's fees and costs will be evaluated by the Court in accordance with 11 U.S.C. §§ 330, 331, the applicable Federal Rules of Bankruptcy Procedure and U.S. Trustee Guidelines. Fees and expenses will be awarded on an interim basis until completion of services, and such fees and expenses will be subject to approval in a final fee application.

Case: 22-50302   Doc# 16   Filed: 04/13/22   Entered: 04/13/22 14:23:57   Page 8 of 10

  h. the Debtors are permitted to indemnify the CRO and those persons serving as executive officers and temporary employees on the same terms as provided to the Debtors' other officers and directors under the corporate bylaws, partnership agreement, or operating agreement, as applicable, and applicable state law, along with insurance coverage under the Debtors' applicable policies. Notwithstanding the foregoing, the Debtors shall not be permitted to indemnify Sherwood or any Sherwood Personnel not serving as executive officers.

  i. any limitation of liability provision in Paragraph 10 or Schedule I of the Engagement Agreement shall not apply during the pendency of these cases.

  j. Paragraph 11 of the Engagement Agreement shall not apply during the pendency of these cases.

  k. neither the CRO nor Sherwood shall be entitled to attorney's fees for litigating disputes over their entitlement to fees. *See Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2169 (2015).

  l. notwithstanding anything contained in the Order, the U.S. Trustee and all parties in interest shall retain all rights granted to them under the Bankruptcy Code, including the right to move for appointment of a trustee or an examiner.[6]

## IV. CONCLUSION

26. The Debtors have not demonstrated that immediate relief is necessary to avoid immediate and irreparable harm. Thus, by virtue of Fed. R. Bankr. 6003(b), consideration of the Motion should be deferred to a hearing date that is more than 21 says after the Petition Date.

27. If the Court is inclined to consider the merits of the Motion on April 18, 2022, the UST opposes the Debtors' retention of Mr. De Camara as CRO and Sherwood to provide CRO support, unless the conditions suggested by the UST in Paragraph 25 hereof are included in any order granting the Motion.

---

[6] If the Court later orders the appointment of a trustee or an examiner, the UST will comply with the requirements of 11 U.S.C. § 1104 and 11 U.SC. § 101(14). *See In re V. Savino Oil & Heating Co., Inc.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989) ("If the court determines that a trustee should be appointed, 'then the United States trustee, after consultation with the parties in interest, *shall* appoint, subject to the court's approval, one *disinterested person* ... to serve as trustee ... in the case.'") (emphasis added); *In re Corona Care Convalescent Corp.*, 527 B.R. 379, 381-82, 388 (Bankr. C.D. Cal. 2015) (holding that, in granting the United States Trustee's motion to appoint a Chapter 11 trustee, the United States Trustee is authorized and directed to appoint a trustee pursuant to 11 U.S.C. § 1104(d)).

28. The UST reserves all her rights, including to move for the appointment of a Chapter 11 trustee in the Debtors' cases

Dated: April 13, 2022

                                                                  Respectfully submitted,

                                                                  TRACY HOPE DAVIS
                                                                  UNITED STATES TRUSTEE

                                                                  By:/s/ Jason Blumberg
                                                                  Jason Blumberg
                                                                  Trial Attorney for the United States Trustee

Case: 22-50302   Doc# 16   Filed: 04/13/22   Entered: 04/13/22 14:23:57   Page 10 of 10