

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

2  A Limited Liability Partnership Including Professional Corporations

3  ORI KATZ, Cal. Bar No. 209561

4  JEANNIE KIM, Cal. Bar No. 270713
Four Embarcadero Center, 17th Floor

5  San Francisco, California 94111-4109

6  Telephone: 415.434.9100
Counsel for Debtors and Debtors in

7  Possession

The following constitutes the order of the Court.
Signed: February 26, 2024

_M. Elaine Hammond_
**M. Elaine Hammond**
**U.S. Bankruptcy Judge**

8              UNITED STATES BANKRUPTCY COURT

9         NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

10  In re

11  FORMATION GROUP FUND I, L.P., a Delaware limited partnership, FORMATION

12  GROUP GP I, LLC, a Delaware limited liability company, and FORMATION GROUP

13  (CAYMAN) FUND I, L.P., a Cayman Islands exempted limited partnership,

14              Debtors and

15              Debtors in Possession.[1]

Case No. 22-50302 (Lead)

(Jointly Administered with
Case Nos. 22-50303 and 22-50337)

Chapter 11

**ORDER (1) APPROVING SALE OF PROPERTY UNDER 11 U.S.C. §§ 363(b), (f), (h), AND (m); RULE 6004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND RULE 6004-1 OF THE BANKRUPTCY LOCAL RULES; AND (2) AUTHORIZING DEBTORS TO DISTRIBUTE SALE PROCEEDS TO YESCO**

16
17
18

19  Date:     February 15, 2024
Time:     10:00 a.m.

20  Place:    Courtroom 11
              280 S. 1st St. 3rd Floor

21              San Jose, CA 95113
              - or -

22              Via ZoomGov

23  Judge:    Hon. M. Elaine Hammond

24  **Potentially Affected Lienholder:    Yesco Holdings Co., Ltd., f/k/a Yesco Co. Ltd.**

25
26

27  [1]  The last four digits of Formation Group Fund I, L.P.'s tax identification number are 6810, and the last four digits

28  of Formation Group I, LLC's tax identification number are 6463; and the last four digits of Formation Group (Cayman) Fund I, L.P. are 6450.  The Debtors' principal place of business and service address in these chapter 11 cases is 451 University Avenue, Palo Alto, CA 94103.

On February 15, 2024, the Court held a hearing on the *Debtors' Motion for Order (1) Approving Sale of Property Under 11 U.S.C. §§ 363(b), (f), (h), and (m); Rule 6004 of the Federal Rules of Bankruptcy Procedure; and Rule 6004-1 of the Bankruptcy Local Rules; and (2) Authorizing Debtors to Distribute Sale Proceeds to Yesco* filed on January 25, 2024, as ECF No. 121 (the "Motion").[1] The Court having read and considered the Motion, the presentations made at the hearing to approve the Motion, the lack of any formal opposition to the Motion, and the Court having found that approval of the Motion is in the best interests of the estates, and finding that notice given of the Motion was adequate under the circumstances and that no other or further notice is required, and good cause appearing therefor,

IT IS HEREBY ORDERED that:

1. The Motion is hereby GRANTED as set forth herein.

2. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these chapter 11 cases pursuant to Bankruptcy Rule 9014. To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law constitute findings of fact, they are adopted as such.

3. Any and all objections (whether made formally or informally) to, reservations of rights regarding, and other responses to the Motion or the relief requested therein, the APA (as defined herein), any and all other ancillary agreements, the Sale (as defined herein), the entry of this Order, or the relief granted herein that have not been withdrawn, waived, adjourned, settled, or otherwise resolved are hereby overruled and denied on the merits with prejudice. Those parties who did not timely object to the Motion or the entry of this Order, or who withdrew their objections thereto, are deemed to have consented to the relief granted herein for all purposes, including without limitation, pursuant to section 363(f)(2) of the Bankruptcy Code.

---

[1] Capitalized terms not otherwise defined in this Order shall have the same meanings ascribed to them in the Motion.

**<u>Approval of the Sale of the Memebox Assets Pursuant to the APA</u>**

4.      The Debtors are authorized to sell and shall sell all of the Debtors' interests in (a) Memebox Corporation, which consist of an aggregate 17,143,836 shares of Series C Preferred Stock; (b) those certain convertible promissory notes executed by Memebox Corporation in favor of, among other lenders, the Debtors, including without limitation, all outstanding accrued and future interest claims thereunder; and (c) 253,164 Common Stock Warrants, each as listed on <u>Schedule 1</u> attached to the APA (as defined herein) (and, together with all securities and interests of the Debtors in Memebox Corporation and all notes and other instruments that are owned or issued by Memebox Corporation to the Debtors, the "<u>Memebox Assets</u>") to Memebox Corporation and its designees (the "<u>Buyer</u>") for the sum of $400,000, in the aggregate (the "<u>Sale Proceeds</u>"), free and clear of any and all liens, claims, interests, and encumbrances in the Memebox Assets (collectively, "<u>Liens or Interests</u>"), pursuant to the terms of the Asset Purchase Agreement attached hereto as **<u>Exhibit A</u>** (the "<u>APA</u>," and the sale of the Memebox Assets contemplated thereunder, the "<u>Sale</u>"), and any and all Liens or Interests shall attach to the Sale Proceeds.

5.      The Buyer is directed to pay to the Debtors[2] the full amount of the Sale Proceeds no later than February 26, 2024.  Upon Closing (as defined in the APA) of the Sale, the Debtors are authorized and directed to transfer and deliver the Memebox Assets to Buyer in accordance with written instructions to be provided by Buyer at or prior to Closing of the Sale.

6.      As set forth on the record of the hearing on the Motion, upon receipt of the Sale Proceeds and subject to this Order becoming final and not subject to appeal, the Debtors shall disburse $330,000 from the Sale Proceeds to Yesco Holdings Co., Ltd. ("<u>Yesco</u>").  The Debtors are authorized to retain the balance of $70,000 of the Sale Proceeds to pay allowed administrative claims and other costs necessary to dissolve, liquidate, wind up, and cancel or terminate the Funds.

7.      The Buyer is purchasing the Memebox Assets "as is, where is," without representations or warranties of any kind.

---

[2]    If this Order has not been entered on or by February 26, 2024, the Debtors' counsel of record is authorized to accept payment of the Sale Proceeds to be held, in trust, for the benefit of the Debtors, pending entry of this Order.

8.     The APA, including any and all other ancillary documents, and all of the terms and conditions thereof, and the Sale of the Memebox Assets to the Buyer contemplated thereby, are hereby approved in all respects.

9.     The Debtors, as well as their affiliates, officers, employees, and agents, are authorized to execute and deliver, and empowered to perform under, consummate, and implement the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take all further actions and execute such other documents as may be necessary or appropriate to the performance of the obligations contemplated by the APA, including without limitation, making any federal, state, or local regulatory filings necessary or advisable in connection with such transfer, without further order of this Court.

10.    This Order and the APA shall be binding in all respects upon the Debtors, the Debtors' bankruptcy estates, their affiliates, all creditors, all holders of equity interests in the Debtors, and all holders of any Liens or Interests, notwithstanding dismissal of these Bankruptcy Cases, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in these chapter 11 cases or upon a conversion of these chapter 11 cases to chapter 7 under the Bankruptcy Code, or other plan fiduciaries, plan administrators, liquidating trustees, or other estate representatives appointed or elected in the Debtors' cases. The terms and provisions of the APA and this Order shall inure to the benefit of the Debtors, their bankruptcy estates, and their creditors, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any other affected third parties, including all persons asserting any Liens or Interests in the Memebox Assets to be sold to the Buyer pursuant to the APA, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

**Sale and Transfer of Memebox Assets**

11.    Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Memebox Assets shall be transferred to the Buyer free and clear of all Liens or Interests

accruing, arising, or relating thereto any time prior to such transfer, whether known or unknown, including without limitation, all Liens or Interests of Yesco. Upon Closing, this Order shall be construed and shall constitute for all purposes a full and complete general assignment, conveyance, and transfer of all of the Memebox Assets or a bill of sale transferring good and marketable title in such Memebox Assets to the Buyer pursuant to the terms and conditions set forth in this Order and the APA. The transfer of the Memebox Assets to the Buyer pursuant to the APA and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as specifically provided for in this Order and the APA, constitute a legal, valid, and effective transfer of the Memebox Assets, and shall vest the Buyer with all of the Debtors' right, title, and interest in and to the Memebox Assets.

12. The Sale of the Memebox Assets is not subject to avoidance by any person or for any reason whatsoever, including without limitation, pursuant to section 363(n) of the Bankruptcy Code, and the Buyer shall not be subject to damages, including without limitation, any costs, fees, or expenses under section 363(n) of the Bankruptcy Code.

13. Except to enforce the APA, upon the Closing, all entities or persons are permanently and forever prohibited, barred, estopped, and permanently enjoined from asserting any Lien or Interest against the Buyer, and its permitted successors, designees, and assigns, or property, or the Memebox Assets conveyed in accordance with the APA.

14. Following the Sale, no holder of a Lien or Interest in or against the Debtors and their estates or the Memebox Assets shall interfere with the Buyer's title to or use and enjoyment of the Memebox Assets based on or related to such Lien or Interest.

**Good Faith of the Buyer**

15. The Buyer is a good faith purchaser pursuant to section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code. The Sale of the Memebox Assets contemplated by the APA is undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale

shall not affect the validity of the Sale (including without limitation, the Sale free and clear of all Liens or Interests), unless such authorization and consummation of the Sale are duly and properly stayed pending such appeal.

16. None of the Debtors, the Buyer, nor any affiliate, agent, representative, or professional of either the Debtors or the Buyer have engaged in any collusion with other bidders or other parties or have taken any other action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code or otherwise. The consideration provided by the Buyer for the Memebox Assets under the APA is fair and reasonable and is not less than the value of the Memebox Assets, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

17. The Buyer is not an "insider" of any of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code.

**Additional Provisions**

18. In connection with the Closing, a certified copy of this Order evidencing the release, cancelation, and termination provided herein of any Lien or Interest of record on the Memebox Assets may be filed or recorded with the appropriate filing agents, filing officers, administrative agencies or units, governmental departments, secretaries of state, federal, state, and local officials, and all other persons, institutions, agencies, and entities which may require such filings by operation of law, the duties of their office, or contract; *provided that*, notwithstanding anything in this Order or the APA to the contrary, the provisions of this Order will be self-executing, and neither the Debtors nor the Buyer will be required to execute or file releases, termination statements, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order.

19. The APA shall be of full force and effect, regardless of any Debtors' lack of good standing in any jurisdiction in which such Debtor is formed or authorized to transact business.

20. To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further

order of the Court, (a) to allow the Buyer to give the Debtors any notice provided for in the APA, and (b) to allow the Buyer to take any and all actions permitted by the APA.

21. The failure specifically to include or make reference to any particular provisions of the APA, including any of the documents, agreements, or instruments executed in connection therewith, in this Order shall not diminish or impair the effectiveness of such provision, document, agreement, or instrument, it being the intent of this Court that the APA and each document, agreement, or instrument is authorized and approved in its entirety.

22. Without the need for further Court approval, the Debtors and the Buyer are authorized to take those steps and execute those documents deemed necessary to effectuate the terms of this Order.

23. As the Debtors have not received any bids for any of the Fund Assets *other than* the Memebox Assets, the Debtors are authorized to abandon the balance of the Fund Assets (listed on **Exhibit B** appended to this Order) to the Debtors' management company, Formation Group Management, LLC, which will acquire such remaining Fund Assets free and clear of all liens, claims, or encumbrances of any kind.

24. Absent a subsequent order of this Court to the contrary, this Order shall be binding in all respects upon any trustees, examiners, authorized representatives, "responsible persons," or other fiduciaries appointed in these chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code or dismissal of these chapter 11 cases.

25. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in these chapter 11 cases (including, without limitation, an order dismissing these chapter 11 cases), any subsequent chapter 7 or chapter 11 cases of the Debtors, or any related proceeding subsequent to entry of this Order, shall conflict with or derogate from the terms of this Order or the APA, and to the extent of any conflict or derogation between this Order or the APA and such future plan or order, the terms of this Order and the APA shall control. In the event of any conflict between this Order and the APA, this Order shall control in all respects.

26. This Order is effective upon entry, and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply.

27. This Court shall retain jurisdiction to interpret, implement, and enforce the terms and provisions of this Order and the APA, including all amendments thereto and any waivers and consents thereunder and each of the other agreements executed in connection therewith, and decide any issues or disputes concerning this Order and the APA or the rights and duties of the parties hereunder or thereunder, including without limitation, the interpretation of the terms, conditions, and provisions hereof and thereof, and the status, nature and extent of the Memebox Assets. The Debtors and/or Buyer shall be given leave to reopen these Bankruptcy Cases to seek such relief.

# **Exhibit A**

Asset Purchase Agreement

# ASSET PURCHASE AGREEMENT

by and among

FORMATION GROUP FUND I, L.P.,

FORMATION GROUP GP I, LLC,

FORMATION GROUP (CAYMAN) FUND I, L.P.

("**Sellers**")

and

MEMEBOX CORPORATION

("**Buyer**")

DATED AS OF FEBRUARY 26, 2024

This Asset Purchase Agreement (this "**Agreement**"), dated as of February 26, 2024, is entered into by and between Formation Group Fund I, L.P., a Delaware limited partnership ("**Formation Fund I**"), Formation Group GP I, LLC, a Delaware limited liability company ("**Formation GP I**"), Formation Group (Cayman) Fund I, L.P., a Cayman Islands exempted limited partnership ("**Formation Cayman Fund I**" and together with Formation Fund I and Formation GP I, "**Sellers**"), on the one hand, and Memebox Corporation, a Delaware corporation ("**Buyer**"), on the other hand.

## RECITALS

**WHEREAS**, on April 10[1] and April 21[2], 2022, each of the Sellers filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), in the United States Bankruptcy Court for the Northern District of California (the "**Bankruptcy Court**"), which chapter 11 cases (the "**Chapter 11 Cases**") are being jointly administered under Case No. 22-50302;

**WHEREAS**, Sellers wish to sell to Buyer, and Buyer wishes to purchase from Sellers, the rights of Sellers to the Purchased Assets (as defined herein), subject to the terms and conditions set forth herein;

**WHEREAS**, Buyer desires to purchase from Sellers the Purchased Assets in exchange for the Purchase Price (as defined herein), on the terms and subject to the conditions set forth in this Agreement;

**WHEREAS**, Sellers have determined, in the exercise of their business judgment, that the sale to Buyer as contemplated herein is the highest or otherwise best bid for the Purchased Assets and therefore it is advisable and in the best interest of their estates and the beneficiaries of the estates to enter into this Agreement, which has been approved by Sellers' applicable governing bodies; and

**WHEREAS**, Sellers sought and obtained approval of, and authorization for, a sale and transfer of the Purchased Assets to the Buyer at a hearing held on February 15, 2024, which sale shall be consummated pursuant to an order of the Bankruptcy Court under sections 105, 363, and 365 of the Bankruptcy Code (the "**Sale Order**") and this Agreement.

**NOW**, **THEREFORE**, in consideration of the mutual covenants and agreements hereinafter set forth and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

---

[1]  On April 10, 2022, each of Formation Fund I and Formation GP I filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

[2]  On April 21, 2022, each of Formation Fund I and Formation GP I filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

# ARTICLE I.
## PURCHASE AND SALE

**Section 1.01   Purchase and Sale of Assets**. Subject to the terms and conditions set forth herein and the Sale Order, at the Closing, Sellers shall sell, assign, transfer, convey and deliver to Buyer and its designees, and Buyer and its designees shall purchase from Sellers, all of Sellers' right, title and interest in the Sellers' interests in Buyer, which consist of (a) 17,143,836 shares of Series C Preferred Stock; (b) those certain convertible promissory notes executed by Buyer in favor of, among other lenders, the Sellers, including without limitation, all outstanding accrued and future interest claims thereunder; and (c) 253,164 Common Stock Warrants[3], each as listed on Schedule 1 attached hereto, and together with any and all other securities and interests of the Sellers in Buyer and all notes and other instruments that are owned or issued by Buyer to the Sellers (collectively, the "**Purchased Assets**"), free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance ("**Encumbrance**").

**Section 1.02   No Liabilities**. Buyer and its designees shall not assume any liabilities or obligations of Sellers of any kind, whether known or unknown, contingent, matured or otherwise, whether currently existing or hereinafter created that relate to the Purchased Assets.

**Section 1.03   Purchase Price**. The aggregate purchase price for the Purchased Assets shall be $400,000 (the "**Purchase Price**"). The Buyer and its designees shall pay the Purchase Price to Sellers at the Closing (as defined herein) in cash, by wire transfer of immediately available funds in accordance with the wire transfer instructions set forth on Schedule 2.

**Section 1.04   Withholding Tax**. Buyer and its designees shall not deduct or withhold from the Purchase Price any withholding taxes that may apply with respect to the sale contemplated in this Agreement.

# ARTICLE II.
## CLOSING

**Section 2.01   Closing**. The closing of the transactions contemplated by this Agreement (the "**Closing**") shall take place on February 26, 2024, or at such other date as mutually agreed to by the parties in writing (the "**Closing Date**"). The Closing shall take place remotely by exchange of documents and signatures (or their electronic counterparts). The consummation of the transactions contemplated by this Agreement shall be deemed to occur at 12:01 a.m. on the Closing Date.

---

[3]  For the avoidance of doubt, as of the Sale, Sellers have not exercised any of the 253,164 Common Stock Warrants issued under those certain convertible promissory notes executed by Buyer in favor of, among other lenders, the Sellers, which are being sold to Buyer as a Purchased Asset.

**Section 2.02    Closing Deliverables**.

(a)    At the Closing, Sellers shall deliver:

(i)    the Purchased Assets to Buyer and its designees in accordance with written instructions to be provided by Buyer prior to Closing; and

(ii)    such other customary instruments of transfer, assumption, filings or documents, in form and substance reasonably satisfactory to Buyer and its designees, as may be required to give effect to this Agreement.

(b)    At the Closing, Buyer and its designees shall deliver to Sellers the Purchase Price by wire transfer of immediately available funds to an account designated in writing by Sellers to Buyer.

## ARTICLE III.
## COVENANTS

**Section 3.01    Transfer Taxes**.  All transfer, documentary, sales, use, stamp, registration, value added and other such taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the documents to be delivered hereunder shall be borne and paid by Buyer when due. Buyer shall, at its own expense, timely file any tax return or other document with respect to such taxes or fees (and Sellers shall cooperate with respect thereto as necessary).

**Section 3.02    Further Assurances**. Following the Closing, each of the parties hereto shall execute and deliver such additional documents, instruments, conveyances and assurances and take such further actions as may be reasonably required to carry out the provisions hereof and give effect to the transactions contemplated by this Agreement and the documents to be delivered hereunder.

## ARTICLE IV.
## MISCELLANEOUS

**Section 4.01    Survival**. All covenants and agreements contained herein shall survive the Closing.

**Section 4.02    Cumulative Remedies**. The rights and remedies provided in this ARTICLE IV are cumulative and are in addition to and not in substitution for any other rights and remedies available at law or in equity or otherwise.

**Section 4.03    Expenses**. All costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such costs and expenses.

**Section 4.04    Notices**. All notices, requests, consents, claims, demands, waivers and other communications hereunder shall be in writing and shall be deemed to have been given (a) when delivered by hand (with written confirmation of receipt); (b) when received by the addressee if

sent by a nationally recognized overnight courier (receipt requested); (c) on the date sent by e-mail of a PDF document (with confirmation of transmission) if sent during normal business hours of the recipient, and on the next business day if sent after normal business hours of the recipient; or (d) on the third day after the date mailed, by certified or registered mail, return receipt requested, postage prepaid. Such communications must be sent to the respective parties at the following addresses (or at such other address for a party as shall be specified in a notice given in accordance with this Section 4.04):

| If to Sellers before March 31, 2024: | SHERWOOD PARTNERS, INC. |
| | 1801 Century Park East, Suite 1420 |
| | Los Angeles, CA 90067 |
| | Attention: Andrew De Camara, Chief Restructuring Officer |
| | E-mail: ad@sherwoodpartners.com |
| | |
| If to Sellers beginning April 1, 2024: | Formation Group Fund I, L.P., *et al.* |
| | P.O. BOX 837 |
| | Los Altos, CA 94023-0115 |
| | Attention: Brian Koo, Authorized Representative |
| | E-mail: brian@formation8.com |
| | |
| with a copy to: | SHEPPARD, MULLIN, RICHTER & HAMPTON LLP |
| | Four Embarcadero Center, 17th Floor |
| | San Francisco, California 94111-4109 |
| | Attention: Ori Katz; Jeannie Kim |
| | E-mail: okatz@sheppardmullin.com; jekim@sheppardmullin.com |
| | |
| If to Buyer: | MEMEBOX CORPORATION |
| | 1825 S Grant Street, #2 |
| | San Mateo, CA 94402 |
| | Attention: Jun H. Choi |
| | E-mail: junhee@memebox.com |

with a copy to:                    GREENBERG TRAURIG, LLP
1000 Louisiana Street, Suite 1700
Houston, Texas 77002
Attention:     Shari L. Heyen; David R. Eastlake
E-mail:        shari.heyen@gtlaw.com;
                    david.eastlake@gtlaw.com

GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Attention:     Howard J. Steinberg
E-mail:        steinbergh@gtlaw.com

**Section 4.05   Headings**. The headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

**Section 4.06   Severability**. If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

**Section 4.07   Entire Agreement**. This Agreement and the documents to be delivered hereunder constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter.

**Section 4.08   Successors and Assigns**. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and permitted assigns.

**Section 4.09   No Third-Party Beneficiaries**. This Agreement is for the sole benefit of the parties hereto and their respective successors and permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

**Section 4.10   Amendment and Modification**. This Agreement may only be amended, modified or supplemented by an agreement in writing signed by each party hereto.

**Section 4.11   Waiver**. No waiver by any party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the party so waiving. No waiver by any party shall operate or be construed as a waiver in respect of any failure, breach or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder

preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.

Section 4.12   **Governing Law**. This Agreement shall be governed by and construed in accordance with the internal laws of the State of California without giving effect to any choice or conflict of law provision or rule (whether of the State of California or any other jurisdiction).

Section 4.13   **Submission to Jurisdiction**. Notwithstanding dismissal of the Chapter 11 Cases, the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes that may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and any and all legal proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court; provided, however, that, a party may commence any action or proceeding in a court other than the Bankruptcy Court solely for the purpose of enforcing an order or judgment issued by the Bankruptcy Court.  The parties hereto hereby (a) consent to and will not oppose re-opening of the Chapter 11 Cases by the Bankruptcy Court, including any party's right to seek re-opening of the Chapter 11 Cases, to enforce the terms of this Agreement or seek a judicial determination as to any claims or disputes arising or resulting from this Agreement, including breach thereof or default thereunder, or the transactions contemplated by it, and (b) submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations pursuant to Section 4.04 hereto. The parties waive personal service of any and all process on each of them and consent that all such service of process shall be made in the manner, to the party and at the address set forth in Section 4.04 of this Agreement, and service so made shall be complete as stated in such Section 4.04.

Section 4.14   **Waiver of Jury Trial**. Each party acknowledges and agrees that any controversy which may arise under this Agreement is likely to involve complicated and difficult issues and, therefore, each such party irrevocably and unconditionally waives any right it may have to a trial by jury in respect of any legal action arising out of or relating to this Agreement or the transactions contemplated hereby.

Section 4.15   **Specific Performance**. The parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity.

Section 4.16   **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their duly authorized officers.

**SELLERS**:

FORMATION GROUP FUND I, L.P.

By_____
    Andrew De Camara
    Chief Restructuring Officer

FORMATION GROUP GP I, LLC

By_____
    Andrew De Camara
    Chief Restructuring Officer

FORMATION GROUP (CAYMAN) FUND I, L.P.

By_____
    Andrew De Camara
    Chief Restructuring Officer

**BUYER**:

MEMEBOX CORPORATION

By_____
    Hyungseok Ha
    Chief Executive Officer

**Schedule 1**
**Purchased Assets**

| Name of Company | Stock Class | Formation Group Fund I, L.P. | Formation Group (Cayman) Fund I, L.P. |
|---|---|---|---|
| Memebox Corporation | Series C Preferred | 17,143,836[1] | - |
| Memebox Corporation | Convertible Promissory Notes | $657,486 | $342,514 |
| Memebox Corporation | Common Warrants | 166,452 | 86,712 |

---

[1] The 17,143,836 shares of Series C Preferred Stock owned by Formation Group Fund I, L.P. are subject to a rebalancing agreement between Formation Group Fund I, L.P. and Formation Group (Cayman) Fund I, L.P. As of the date of this Agreement, Formation Group Fund I, L.P. has not transferred to Formation Group (Cayman) Fund I, L.P. any shares under the rebalancing agreement.

**Schedule 2**
**Wire Instructions**

| | |
|---|---|
| Beneficiary Name: | Formation Group Fund 1 LP, Chapter 11 DIP |
| Beneficiary Account Number: | 5500018179 |
| Bank Routing Number: | 322070381 |
| Bank Routing/ Swift Code: | EWBKUS66XXX |
| Receiving Bank Name: | East West Bank |
| Receiving Bank Address: | 135 N. Los Robles Ave., Suite 600 Pasadena, CA 91101 |

**Exhibit B**

**Assets and Interests of the Funds Abandoned to Formation Group Management, LLC**

| Name of Portfolio Company | Stock Class | Formation Group Fund I, L.P. | Estimated ownership % | Formation Group (Cayman) Fund I, L.P. | Estimated ownership % |
|---|---|---|---|---|---|
| YelloMobile, Inc. | Common Stock | 25,018 | 0.50% | 13,032 | 0.26% |
| Bluelight SPV, L.P. | Partnership Interest | | 5.498% | | 2.863% |

**END OF ORDER**

1 <u>**Court Service List**</u>

2 Registered ECF Participants only.